NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

13-P-506                                          Appeals Court


JOHN E. HASKINS  vs.  DEUTSCHE BANK NATIONAL TRUST COMPANY,
trustee,[1] & others.[2]


No. 13-P-506.

Worcester.      September 3, 2014. - November 10, 2014.

Present:  Green, Graham, & Katzmann, JJ.



Mortgage, Foreclosure.  Notice, Foreclosure of mortgage.
     Assignment.  Consumer Protection Act, Investigative demand.
     Fraud.  Practice, Civil, Complaint.  Contract, Implied
     covenant of good faith and fair dealing.




     Civil action commenced in the Superior Court Department on
June 13, 2012.

     A motion to dismiss was heard by Janet Kenton-Walker, J.


     Adam T. Sherwin for the plaintiff.
     Christopher A. Cornetta for the defendants.


     GREEN, J.  We are called upon to address a question raised

but not resolved in U.S. Bank Natl. Assn. v. Schumacher, 467

_____

     [1] Of the Residential Asset Securitization Trust 2004-A2,
Mortgage Pass-Through Certificates, Series 2004-B.

     [2] OneWest Bank, FSB; MERSCORP Holdings, Inc.; and Mortgage
Electronic Registration Systems, Inc.

Mass. 421 (2014) (Schumacher):  whether a notice of a

mortgagor's right to cure a mortgage loan default, sent pursuant

to G. L. c. 244, § 35A, is deficient if it is sent by the

mortgage servicing agent (rather than the record holder of the

mortgage), or if it identifies the servicing agent as the

mortgage holder.  We conclude that the notice in the present

case complied with the statute, and affirm the judgment of the

Superior Court dismissing the plaintiff's complaint.[3]

Background.  The plaintiff, John E. Haskins, purchased his

residence at 98 Southville Road, Southborough, in 2002.  In

2004, incident to a refinancing transaction, he granted a

mortgage to defendant Mortgage Electronic Registration Systems,

Inc. (MERS), as nominee for First Magnus Financial Corporation

(First Magnus).[4]  Haskins thereafter defaulted on his loan

payment obligations and, by letter dated May 4, 2010, IndyMac

Mortgage Services, the mortgage servicing division of defendant

OneWest Bank, FSB (IndyMac), informed Haskins that he was in

default, but that he had the right to cure the default within

ninety days.  The letter identified "IndyMac Mortgage Services,

---

[3] As discussed infra, we likewise reject the plaintiff's
various other claims of error in the dismissal of his complaint.

[4] As part of the refinancing, Haskins also executed a
promissory note in favor of First Magnus.

a Division of OneWest Bank" as the mortgage holder.[5] In fact, record title to the mortgage was held at the time by MERS, and the equitable or beneficial ownership of the loan secured by the mortgage was held by defendant Deutsche Bank National Trust Company (Deutsche Bank), as trustee of the Residential Asset Securitization Trust 2004-A2, Mortgage Pass-Through Certificates, Series 2004-B (securitization trust). By letter dated December 8, 2010, IndyMac again advised Haskins of the default, and of his right to cure the default (this time within 150 days); like the May 4 letter, the December 8 letter identified "IndyMac Mortgage Services, a Division of OneWest Bank" as the mortgage holder. Haskins did not cure the default, and Deutsche Bank thereafter obtained a judgment from the Land Court, pursuant to the Servicemembers Civil Relief Act, allowing it to foreclose the mortgage pursuant to the statutory power of sale. Prior to foreclosure, however, Haskins commenced the present action in Superior Court, seeking declaratory and injunctive relief to prevent the foreclosure, as well as money damages. A judge allowed the defendants' motion to dismiss the complaint for failure to state a claim upon which relief may be granted. The case comes to us on the plaintiff's appeal from the resulting judgment of dismissal.

---

[5] The copy of the May 4 letter in the record (and attached as an exhibit to the plaintiff's amended complaint) contains only the first page of the letter.

Discussion. 1. Section 35A notice. In Schumacher, the Supreme Judicial Court considered whether alleged deficiencies in notice given to a defaulted borrower pursuant to G. L. c. 244, § 35A, furnished a basis to challenge the title acquired pursuant to a subsequent extrajudicial foreclosure sale. 467 Mass. at 422. The court concluded that the notice of a borrower's right to cure a default, required under § 35A, is not a part of the foreclosure process, but instead "is designed to give a mortgagor a fair opportunity to cure a default before the debt is accelerated and before the foreclosure process is commenced through invocation of the power of sale." Id. at 431. Accordingly, "G. L. c. 244, § 35A, is not one of the statutes 'relating to the foreclosure of mortgages by the exercise of a power of sale,'" ibid., quoting from G. L. c. 183, § 21, and a deficiency in the notice sent pursuant to § 35A does not furnish a basis to challenge the validity of the foreclosure. See id. at 429-430. Instead, the appropriate avenue for a borrower to raise a challenge to the form of notice given under § 35A is by means of an equitable action, prior to foreclosure, seeking to enjoin the foreclosure. Id. at 422 n.4.

By virtue of its conclusion, the court did not reach the second of two questions on which it solicited amicus briefs:[6]

---

[6] For reference to the amicus briefs filed in Schumacher, see 467 Mass. at 423 n.5. We take judicial notice of the

whether a notice sent pursuant to § 35A that lists the name and address of the mortgage servicer, but incorrectly identifies it as the current holder of the mortgage, satisfies the statutory requirement that the notice inform the mortgagor of, inter alia, "the name and address of the mortgagee, or anyone holding thereunder." G. L. c. 244, § 35A(c)(4), inserted by St. 2007, c. 206, § 11.[7] The present appeal requires us to reach that question.

General Laws c. 244, § 35A, gives a mortgagor of real property in the Commonwealth a right to cure a payment default before foreclosure proceedings may be commenced.[8] In its present

---

questions framed for amici, as described in the docket of that case.

[7] This language now appears in § 35A(h)(4).

[8] As approved on November 29, 2007, and made effective on May 1, 2008, § 35A gave mortgagors a ninety-day cure period. St. 2007, c. 206, § 11. The 2010 amendment, effective August 7, 2010, among other things extended the presumptive cure period from ninety to 150 days, subject to certain exceptions not applicable in the present case. St. 2010, c. 258, § 7. The 2007 version of § 35A was in effect at the time of the May 4 notice (and throughout the ninety-day cure period following it). The 2010 version was in effect at the time of the December 8 notice. The parties do not address why IndyMac sent the December 8 notice, or whether it, or the May 4 notice, should be considered the effective notice for purposes of this case. (As we indicated in note 5, the copy of the May 4 notice includes only the first page, and ends before the signature.) The question is immaterial, as both notices are identical in their references to IndyMac as the "mortgage holder," and the plaintiff asserts no claim that the December 8 notice failed in any other respect to meet the requirements imposed by the 2010 amendments. For purposes of our discussion, we shall refer to

form, the statute provides that "[t]he mortgagee, or anyone holding thereunder, shall not accelerate maturity of the unpaid balance of [a residential mortgage or note secured thereby] or otherwise enforce the mortgage because of a default consisting of the mortgagor's failure to make any [payment required by such residential mortgage or note secured thereby] by any method authorized by this chapter or any other law until at least 150 days after the date a written notice is given by the mortgagee to the mortgagor."  G. L. c. 244, § 35A(g), inserted by St. 2010, c. 258, § 7.  Subsection (h) of the statute provides that the required notice "shall inform" the mortgagor of various matters, as set out in the margin.[9]

_____

the December 8 notice and the version of the statute then in effect.

[9] General Laws c. 244, § 35A(h), provides as follows:

"(h) The notice required in subsection (g) shall inform the mortgagor of the following: --

"(1)  the nature of the default claimed on such mortgage of residential real property and of the mortgagor's right to cure the default by paying the sum of money required to cure the default;

"(2) the date by which the mortgagor shall cure the default to avoid acceleration, a foreclosure or other action to seize the home, which date shall not be less than 150 days after service of the notice and the name, address and local or toll free telephone number of a person to whom the payment or tender shall be made unless a creditor chooses to begin foreclosure proceedings after a right to cure period lasting less than 150 days that engaged in a good faith effort to negotiate and agree upon a commercially

reasonable alternative but was not successful in resolving the dispute, in which case a foreclosure or other action to seize the home may take place on an earlier date to be specified;

"(3) that, if the mortgagor does not cure the default by the date specified, the mortgagee, or anyone holding thereunder, may take steps to terminate the mortgagor's ownership in the property by a foreclosure proceeding or other action to seize the home;

"(4) the name and address of the mortgagee, or anyone holding thereunder, and the telephone number of a representative of the mortgagee whom the mortgagor may contact if the mortgagor disagrees with the mortgagee's assertion that a default has occurred or the correctness of the mortgagee's calculation of the amount required to cure the default;

"(5) the name of any current and former mortgage broker or mortgage loan originator for such mortgage or note securing the residential property;

"(6) that the mortgagor may be eligible for assistance from the Homeownership Preservation Foundation or other foreclosure counseling agency, and the local or toll free telephone numbers the mortgagor may call to request this assistance;

"(7) that the mortgagor may sell the property prior to the foreclosure sale and use the proceeds to pay off the mortgage;

"(8) that the mortgagor may redeem the property by paying the total amount due, prior to the foreclosure sale;

"(9) that the mortgagor may be evicted from the home after a foreclosure sale; and

"(10) the mortgagor may have the following additional rights, depending on the terms of the residential mortgage: (i) to refinance the obligation by obtaining a loan which would fully repay the residential mortgage debtor; and (ii) to voluntarily grant a deed to the residential mortgage lender in lieu of foreclosure.

At the time of the December 8 notice, MERS held record title to the mortgage.  Accordingly, the notice was inaccurate in its identification of IndyMac as the current mortgage holder, if and to the extent an entity's status as mortgagee under the statute is determined by record title.[10]  The plaintiff contends that the disparity requires a conclusion that the notice is ineffective, because "we adhere to the familiar rule that 'one who sells under a power [of sale] must follow strictly its terms.  If he fails to do so there is no valid execution of the power, and the sale is wholly void.'"  U.S. Bank Natl. Assn. v. Ibanez, 458 Mass. 637, 646 (2011), quoting from Moore v. Dick, 187 Mass. 207, 211 (1905).  In response, the defendants contend that a defect in a § 35A notice will render it ineffective only if the noncompliance would render a subsequent foreclosure "so fundamentally unfair that [the homeowner] is entitled to

---

"The notice shall also include a declaration, in the language the creditor has regularly used in its communication with the borrower, appearing on the first page of the notice stating:  'This is an important notice concerning your right to live in your home.  Have it translated at once.'

"The division of banks shall adopt regulations in accordance with this subsection."

[10] It also appears that, as servicer, IndyMac held no beneficial ownership interest in the mortgage, or in the debt secured thereby; instead, its role was strictly as servicing agent for Deutsche Bank (which in turn served as trustee of the securitization trust), the note holder and owner of the debt secured by the mortgage.

affirmative equitable relief . . . 'for reasons other than failure to comply strictly with the power of sale provided in the mortgage.'"  Schumacher, 467 Mass. at 433 (Gants, J., concurring), quoting from Bank of America, N.A. v. Rosa, 466 Mass. 613, 624 (2013).  See Bank of N.Y. Mellon Corp. v. Wain, 85 Mass. App. Ct. 498, 501-502 (2014).  In our view, neither position is correct.

As the Supreme Judicial Court made clear in Schumacher, § 35A "is not one of the statutes 'relating to the foreclosure of mortgages by the exercise of a power of sale.'"  467 Mass. at 431, quoting from G. L. c. 183, § 21.  Accordingly, the rule of strict adherence observed in Ibanez and invoked by the plaintiff is inapposite.  However, the circumstances here are unlike those in Schumacher in a particularly important respect; indeed, the present case is in precisely the posture recognized by the court in Schumacher as appropriate to challenge the validity of a § 35A notice in order to prevent a foreclosure sale from going forward.  See Schumacher, supra at 422 n.4.  Accordingly, the standard of "fundamental unfairness" furnishes too narrow a lens through which to view potential grounds for relief based on a defective notice.[11]  We accordingly consider how the statutory

_____

[11] The fundamental unfairness standard discussed in Schumacher applies when a § 35A violation is raised in a postforeclosure summary process action, instead of properly in a preforeclosure equity action.  467 Mass. at 433 (Gants, J.,

requirements should be construed, using familiar principles of statutory construction.

> "Our primary duty in interpreting a statute is 'to effectuate the intent of the Legislature in enacting it.' International Org. of Masters v. Woods Hole, Martha's Vineyard & Nantucket S.S. Auth., 392 Mass. 811, 813 (1984). We begin with the language of the statute, as 'the principal source of insight into legislative intent.' Providence & Worcester R.R. v. Energy Facilities Siting Bd., 453 Mass. 135, 142 (2009), quoting New Bedford v. Energy Facilities Siting Council, 413 Mass. 482, 485 (1992), S.C., 419 Mass. 1003 (1995). Where the words are 'plain and unambiguous' in their meaning, we view them as 'conclusive as to legislative intent.' Sterilite Corp. v. Continental Cas. Co., 397 Mass. 837, 839 (1986). Where the meaning of a statute is not plain from its language, we consider 'the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated.' DiFiore v. American Airlines, Inc., 454 Mass. 486, 490 (2009), quoting Industrial Fin. Corp. v. State Tax Comm'r, 367 Mass. 360, 364 (1975). See Oxford v. Oxford Water Co., 391 Mass. 581, 588 (1984), quoting Commonwealth v. Welosky, 276 Mass. 398, 401-402 (1931), cert. denied, 284 U.S. 684 (1932) ('Statutes are to be interpreted . . . in connection with their development, their progression through the legislative body, the history of the times . . .'). 'Where possible, we construe the various provisions of a statute in harmony with one another, recognizing that the Legislature did not intend internal contradiction.' DiFiore v. American Airlines, Inc., supra at 491."

Water Dept. of Fairhaven v. Department of Envtl. Protection, 455 Mass. 740, 744-745 (2010).

---

concurring). Here, the plaintiff indeed filed a preforeclosure equity action. Because our view is that the § 35A notice in this case conformed to the statutory requirements, we do not reach the question what type of defect in the notice would entitle a mortgagor to relief.

Though the term "mortgagee" rests on centuries of common law, relatively recent developments in the methods by which residential mortgages are funded, held, and managed have introduced new complexity in typical residential finance transactions, creating some ambiguity in how some traditionally well-understood terms should be understood with reference to contemporary transaction structures. Indeed, the Supreme Judicial Court recently observed that the term "mortgagee" as used in the statutes governing the foreclosure process "is not free from ambiguity." Eaton v. Federal Natl. Mort. Assn., 462 Mass. 569, 571 (2012). In Eaton, the court adopted an interpretation of the term in the context of a foreclosure sale to mean "the person or entity . . . holding the mortgage [at the time of a foreclosure sale] and also either holding the mortgage note or acting on behalf of the note holder." Ibid. However, recognizing that its interpretation represented a departure from traditional practices resting on the understanding that a foreclosing mortgagee need hold only the mortgage and not the note, the court held that its interpretation would apply only prospectively.[12] Id. at 588-589.

---

[12] The notice at issue in the present case preceded the Eaton decision.

Section 35A contains no definition of the term "mortgagee."[13] The recognized ambiguity of the term in the context of foreclosure sales, and in light of contemporary financing structures, precludes us from relying solely on the plain language of the statute to resolve the question of its meaning. We accordingly consider "the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated." DiFiore, 454 Mass. at 490, quoting from Industrial Fin. Corp., supra.

General Laws c. 244, § 35A, was adopted in response to recommendations made in the "Report of the Mortgage Summit Working Groups, Recommended Solutions to Prevent Foreclosures and to Ensure Massachusetts Consumers Maintain the Dream of Homeownership," dated April 11, 2007 (Mortgage Summit Report), which itself was commissioned in "response to rising foreclosures both locally and nationally, increasing evidence of mortgage fraud, and other developments in the mortgage market."

---

[13] We note that the 2010 amendments added a definition of "Creditor" as "a person or entity that holds or controls, partially, wholly, indirectly, directly, or in a nominee capacity, a mortgage loan securing a residential property, including, without limitation, an originator, holder, investor, assignee, successor, trust, trustee, nominee holder, Mortgage Electronic Registration System or mortgage servicer, including the Federal National Mortgage Association or the Federal Home Loan Mortgage Corporation. 'Creditor' shall also include any servant, employee or agent of a creditor." G. L. c. 244, § 35A(a), inserted by St. 2010, c. 258, § 7.

Mortgage Summit Report, supra at 2.  The Mortgage Summit Report highlighted what the authors considered "[f]our problems with existing Massachusetts law":  (1) "[t]he only pre-foreclosure notice required by Massachusetts law may be sent as few as 14 days before the [foreclosure] sale"; (2) "Massachusetts law does not include a right to cure a default to prevent foreclosure"; (3) "Massachusetts law allows foreclosure sales without a prior court proceeding"; and (4) "Massachusetts homeowners get no notice of what happens at the foreclosure sale of their home." Id. at 16.  Accordingly, the Mortgage Summit Report recommended implementation of a requirement that notice be sent to defaulting borrowers ninety days before commencement of foreclosure, advising them of a right to cure a payment default and thereby avoid foreclosure, and a prohibition against imposition of attorney's fees or other costs during the specified cure period.  Id. at 17.

As originally adopted, § 35A tracked the Mortgage Summit Report recommendation of a notice requirement preceding commencement of foreclosure, and a ninety-day cure period, exactly.  The statute also required the notice to advise the mortgagor of, inter alia, the nature of the default, the name of any current and former mortgage broker or mortgage loan originator, the potential eligibility of the mortgagor for assistance from the Massachusetts Housing Finance Agency (and

information about how the mortgagor might request such assistance), and the "name and address of the mortgagee, or anyone holding thereunder, and the telephone number of a representative of the mortgagee whom the mortgagor may contact if the mortgagor disagrees with the mortgagee's assertion that a default has occurred or the correctness of the mortgagee's calculation of the amount required to cure the default."  G. L. c. 244, § 35A(c)(4), inserted by St. 2007, c. 206, § 11.

The evident purpose of the notice required by § 35A is to "give a mortgagor a fair opportunity to cure a default before the debt is accelerated and before the foreclosure process is commenced through invocation of the power of sale."  Schumacher, 467 Mass. at 431.  To accomplish that purpose, the statutory notice is designed to provide the mortgagor with the information necessary to contact the party who holds all relevant information about the loan (including balances, payment history, and overdue payment amounts), and who holds authority to make decisions or otherwise take action to allow the mortgagor to cure any default, pay off the loan balance by means of a sale or refinancing, or undertake discussions of a possible modification of the loan.  In the circumstances of loans such as the one here, that party is the mortgage servicer.

MERS typically holds a bare legal title to the mortgage security instrument.  See, e.g., Eaton, 462 Mass. at 572;

Sullivan v. Kondaur Capital Corp., 85 Mass. App. Ct. 202, 209 (2014). See generally Culhane v. Aurora Loan Servs. of Neb., 708 F.3d 282, 287 (1st Cir. 2013). A securitization trust holding the equitable or beneficial interest in the debt secured by the mortgage likewise typically plays no active role in managing the mortgage (though a securitization trust does hold the authority to accept or reject modification proposals negotiated by the servicer, and to direct ultimate decisions concerning whether to complete or abandon a foreclosure sale); instead the servicer is responsible for collecting and recording instalment payments on the loan, conducting communications with the mortgagor, and managing the foreclosure process if the loan goes into default (or alternatively considering terms of a loan modification). See generally Levitin & Twomey, Mortgage Servicing, 28 Yale J. on Reg. 1, 16, 23 (2011). Viewed against the statutory objective of furnishing a mortgagor with the information necessary to contact the party from whom information about the loan may be obtained, to whom any curative payment may be made, or with whom modification discussions might be conducted, it is sensible to consider the servicer within the scope of parties encompassed by the term "mortgagee" in § 35A(h)(4).[14] Moreover, nothing in the statutory objective

---

[14] We acknowledge the observation in Eaton that "[w]here the Legislature uses the same words in several sections which

appears to be furthered by furnishing the mortgagor with the name and address of the mortgagee in circumstances where the loan is serviced by a different entity.  In such circumstances, as we have observed, all relevant information concerning the loan and all communications with the mortgagor will be with the servicer (here, IndyMac) and not the holder of either the legal interest in the mortgage (here, MERS) or the beneficial interest in the loan (here, the securitization trust).[15]

We are buttressed in our conclusion by the regulations promulgated by the division of banks pursuant to its rule-making authority set forth in § 35A(h), which include mortgage servicers among the entities included in the definition of the term "mortgagee" for purposes of effectuating the right to cure

---

concern the same subject matter, the words must be presumed to have been used with the same meaning in each section."  462 Mass. at 583 (citation omitted).  However, Eaton considered the meaning of "mortgagee" in the context of a foreclosure sale conducted under the statutory power of sale and, as we have observed, § 35A is not part of the foreclosure process.  See Schumacher, 467 Mass. at 431.

[15] By comparison, the requirement that the notice include the name and address of the mortgage broker or the loan originator, see G. L. c. 244, § 35A(h)(5), appears (in conjunction with § 35A[k], which requires a copy of the notice to be filed with the commissioner of the division of banks) designed to collect a database of information about mortgage loan originators who engaged in predatory loan origination practices.  See Mortgage Summit Report, supra at 14.

notification process.  See 209 Code Mass. Regs. § 56.02 (2012).[16]
Though that particular regulation was not promulgated until
March 2, 2012, after the notice at issue here, it illustrates
the interpretation of the statute by the administrative
authority charged with its enforcement, which we consider to be
reasonable for the reasons explained supra.  We accordingly
extend it substantial deference.  See Commerce Ins. Co. v.
Commissioner of Ins., 447 Mass. 478, 481 (2006).  See also
Massachusetts Med. Soc. v. Commissioner of Ins., 402 Mass. 44,
62 (1988) ("Where the [agency's] statutory interpretation is
reasonable, . . . [we] should not supplant [its] judgment").

For the foregoing reasons, we discern no merit in the
plaintiff's contention that the § 35A notice was defective
because it identified IndyMac (the mortgage servicer) as the

---

[16] We also note that the "Frequently Asked Questions"
section on the division of banks Web site includes the
following:

"Q:  Is it acceptable for the servicer to put its name
in the Notice everywhere the word 'Mortgagee' appears?"

"A:  Yes.  It is acceptable for the servicer or any
entity authorized to act on behalf of the mortgagee to put its
name in every space that references mortgagee.  The references
should be consistent throughout the Notice."

See Frequently Asked Questions on 150/90 Day Right To Cure
Notice, available only at http://www.mass.gov/ocabr/banking-and-
finance/laws-and-regulations/dob-faqs/faq04042012.html
[http://perma.cc/R38E-KF6Y] (last visited November 6, 2014).

mortgage holder.  The motion judge correctly dismissed the count of the plaintiff's complaint asserting that claim.

2.  Other issues.  The plaintiff's remaining claims of error require little discussion.  There is no merit to the plaintiff's claim that the § 35A notice was invalid because it was not sent by certified mail; the statute provides that notice given in that manner is "deemed delivered," but does not require the notice to be sent in that manner.  St. 2010, c. 258, § 7. In any event, the plaintiff acknowledges that he received the notice.  There is likewise no merit to the plaintiff's claim that MERS is without capacity to execute a valid assignment of the mortgage (because it held a bare legal title to the mortgage, separated from any beneficial interest).  See Sullivan, 85 Mass. App. Ct. at 209-210.  The plaintiff's claim under G. L. c. 93A was properly dismissed because he did not send the requisite demand prior to commencement of suit.[17]  See G. L. c. 93A, § 9(3); Kanamaru v. Holyoke Mut. Ins. Co., 72 Mass. App. Ct. 396, 407-408 (2008).  Similarly, the plaintiff's claim of fraud was properly dismissed because his complaint did not plead it with particularity.  See Mass.R.Civ.P. 9(b), 365

---

[17] The plaintiff argues for the first time on appeal that the demand requirements of G. L. c. 93A, § 9(3), do not apply because the defendants do not maintain a place of business or keep assets in the Commonwealth.  The plaintiff failed to plead this exception in his amended complaint, and he failed to raise the argument below.  Thus, the argument is waived.  Carey v. New England Organ Bank, 446 Mass. 270, 285 (2006).

Mass. 751 (1974). The plaintiff's challenge to the validity of the signatures on the mortgage assignment is precluded by the provisions of G. L. c. 183, § 54B.[18] Finally, the plaintiff pleaded no facts to support his claim that the defendants' attempts to proceed with foreclosure of the property, based upon the plaintiff's payment default, constituted a breach of the implied covenant of good faith and fair dealing.

Judgment affirmed.

---

[18] Conformably to § 54B, the assignment was executed by a person identified as "JC San Pedro," who purported to be an assistant secretary of MERS.