NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

16-P-1244                                          Appeals Court

SANDRA M. STRAWBRIDGE  vs.  THE BANK OF NEW YORK MELLON.[1]


No. 16-P-1244.

Norfolk.     May 1, 2017. - July 20, 2017.

Present:  Agnes, Massing, & Lemire, JJ.


Mortgage, Foreclosure, Assignment.  Real Property, Mortgage.
     Notice, Foreclosure of mortgage.  Assignment.  Practice,
     Civil, Motion to dismiss.



     Civil action commenced in the Superior Court Department on August 11, 2015.

     A motion to dismiss was heard by Jeffrey A. Locke, J., and a motion for reconsideration was considered by him.


     Glenn F. Russell, Jr., for the plaintiff.
     Anthony J. Coletti for the defendant.


     AGNES, J.  The plaintiff, Sandra M. Strawbridge, appeals

from a judgment of the Superior Court dismissing her verified

complaint for declaratory and injunctive relief, which

_____

     [1] Formerly known as Bank of New York, as trustee for the Certificateholders CWABS, Inc., Asset Backed Certificates Series 2007-10.

challenges the action of the defendant, Bank of New York Mellon (Bank), as trustee for the Certificateholders CWABS, Inc., Asset Backed Certificates Series 2007-10 (CWABS trust), to foreclose on her property. She maintains that the judge erred in applying G. L. c. 244, § 14, and some of our recent case law. As Strawbridge has failed to state a plausible claim that the Bank, at the time of foreclosure, did not hold both the mortgage and the note, see Eaton v. Federal Natl. Mort. Assn., 462 Mass. 569, 583-589 (2012), and based on the sound reasoning in the judge's thorough memorandum of decision, we affirm.

Background. The verified complaint, viewed in a light most favorable to Strawbridge, contains the following facts. In 2007, Strawbridge received a $370,000 loan as part of a home refinancing arrangement with Countrywide Home Loans, Inc. (Countrywide). In exchange for the loan, Strawbridge executed a promissory note payable to Countrywide, and granted a mortgage on the subject property to secure payment for the note. The mortgage identified Countrywide as the "Lender" and Strawbridge as the "Borrower." The mortgage also designated Mortgage Electronic Registration Systems, Inc. (MERS)[2] as the mortgagee, "acting solely as a nominee for Lender and Lender's successors and assigns." Although MERS held the mortgage solely as a

---

[2] For a discussion about MERS and its role in the residential mortgage industry, see Eaton, 462 Mass. at 572 n.5.

nominee for Countrywide, the mortgage contained a provision authorizing MERS to act on behalf of Countrywide in the event of a default.[3]

In 2009, Strawbridge defaulted on her note by failing to keep up with her mortgage payments.  In February, 2010, MERS assigned Strawbridge's mortgage to the Bank.  A MERS "Assistant Secretary and Vice President" executed the assignment, which was notarized and recorded at the appropriate registry of deeds.  Later, in March, 2015, a "Second Assistant Vice President" at the Bank's loan servicer executed an "Affidavit Regarding Note Secured by Mortgage Being Foreclosed."  That affidavit states that the Bank is the holder of the note.  In addition, in April, 2015, the Bank's loan servicer executed a "Certificate Relative to Foreclosing Mortgagee's Right to Foreclose Pursuant to 209 C.M.R. 18.21A(2)(c),"[4] which certified that the Bank is the

---

[3] The mortgage stated that "Borrower understands and agrees that MERS holds only legal title to the Interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender."

[4] 209 Code Mass. Regs. § 18.00 et seq. (2013), entitled "Conduct of the Business of Debt Collectors and Loan Servicers," was promulgated by the Massachusetts Division of Banks and Loan Agencies.  Section 18.21A(2)(c) provides:

"A third party loan servicer shall certify in writing the basis for asserting that the foreclosing party has the

"holder of the Mortgage" and "the holder of the Note or is authorized agent of the Note holder with the specific authority to enforce payment and pursue foreclosure of the Mortgage on behalf of such Note holder."  Finally, in July, 2015, the Bank sent Strawbridge a notice of foreclosure sale pursuant to G. L. c. 244, § 14, informing her that a foreclosure sale would take place in August.

Strawbridge responded by filing a complaint in the Superior Court, claiming slander of title and seeking a declaration that the Bank could not utilize the statutory power of sale remedy under G. L. c. 244, § 14, because it had failed to comply with the strict statutory requirements.  Strawbridge also sought, and was granted, an ex parte restraining order enjoining the Bank from foreclosing.  After a hearing, a judge vacated the restraining order and denied Strawbridge's request for a preliminary injunction.  The Bank then filed a motion to dismiss all counts of Strawbridge's complaint pursuant to Mass.R.Civ.P. 12(b)(6), 365 Mass. 754 (1974), which a different judge granted.

---

right to foreclose, including but not limited to, certification of the chain of title and ownership of the note and mortgage from the date of the recording of the mortgage being foreclosed upon.  The third party loan servicer shall provide such certification to the borrower with the notice of foreclosure, provided pursuant to M.G.L. c. 244, § 14, and shall also include a copy of the note with all required endorsements."

Discussion.  Our review of the allowance of a motion to dismiss a complaint for failing to state a claim upon which relief may be granted under Mass.R.Civ.P. 12(b)(6) is de novo. Galiastro v. Mortgage Electronic Registration Sys., Inc., 467 Mass. 160, 164 (2014).  The allegations of the complaint are taken to be true along with any reasonable inferences that may be drawn in the plaintiff's favor.  Golchin v. Liberty Mut. Ins. Co., 460 Mass. 222, 223 (2011), S.C., 466 Mass. 156 (2013), quoting from Marram v. Kobrick Offshore Fund, Ltd., 442 Mass. 43, 45 (2004).  See Curtis v. Herb Chambers I-95, Inc., 458 Mass. 674, 676 (2011).  "What is required at the pleading stage are factual 'allegations plausibly suggesting (not merely consistent with)' an entitlement to relief."  Golchin, supra, quoting from Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008).

While Strawbridge raised a variety of issues in her complaint, her principal contention is that the Bank lacks standing to exercise the power of sale in her mortgage because the Bank did not comply with the requirements of G. L. c. 244, § 14, as construed by the Supreme Judicial Court in Eaton, 462 Mass. at 583-589.  Strawbridge also claims that MERS's assignment of her mortgage to the Bank was void because the

assignment occurred after a date established in the pooling service agreement (PSA) of the CWABS trust.[5]

The record in this case does not support these claims. Included as an exhibit to Strawbridge's complaint is an assignment of Strawbridge's mortgage from MERS to the Bank. The record also contains an affidavit from the Bank's loan servicer, in which the affiant avers that the Bank holds the note as trustee of the CWABS trust. In Eaton, the Supreme Judicial Court stated that "a foreclosing mortgage holder . . . may establish that it either held the note or acted on behalf of the note holder at the time of the foreclosure sale by filing an affidavit in the appropriate registry of deeds pursuant to G. L. c. 183, § 54B."[6] 462 Mass. at 589 n.28. The record before us

---

[5] "PSAs are securitized trust agreements that operate[] as the governing document for the Trust." Dyer v. U.S. Bank, N.A., 141 F. Supp. 3d 149, 154 (D. Mass. 2015) (quotation omitted). Under the PSA in this case, MERS was obliged to transfer certain mortgage loans and their supporting documentation to the Bank no later than thirty days after June 29, 2007.

[6] General Laws c. 183, § 54B, as amended by St. 2012, c. 282, § 2, reads as follows: " Notwithstanding any law to the contrary, (1) a discharge of mortgage; (2) a release, partial release or assignment of mortgage; (3) an instrument of subordination, non-disturbance, recognition, or attornment by the holder of a mortgage; (4) any instrument for the purpose of foreclosing a mortgage and conveying the title resulting therefrom, including but not limited to notices, deeds, affidavits, certificates, votes, assignments of bids, confirmatory instruments and agreements of sale; or (5) a power of attorney given for that purpose or for the purpose of servicing a mortgage, and in either case, any instrument executed by the attorney-in-fact pursuant to such power, if

indicates that the Bank has complied with § 54B.[7]  Although an

assignment from MERS to the Bank cannot convey greater powers

than MERS held, the mortgage in this case expressly granted MERS

the power to foreclose and to sell the property, notwithstanding

its status as a "nominee for the Lender."[8]  MERS's nominee status

---

executed before a notary public, justice of the peace or other officer entitled by law to acknowledge instruments, whether executed within or without the commonwealth, by a person purporting to hold the position of president, vice president, treasurer, clerk, secretary, cashier, loan representative, principal, investment, mortgage or other officer, agent, asset manager, or other similar office or position, including assistant to any such office or position, of the entity holding such mortgage, or otherwise purporting to be an authorized signatory for such entity, or acting under such power of attorney on behalf of such entity, acting in its own capacity or as a general partner or co-venturer of the entity holding such mortgage, shall be binding upon such entity and shall be entitled to be recorded, and no vote of the entity affirming such authority shall be required to permit recording."

[7] The "Certificate Relative to Foreclosing Mortgagee's Right to Foreclose Pursuant to 209 C.M.R. 18.21A(2)(c)," executed by the Bank's loan servicer, is further evidence of the Bank's possession of both the mortgage and the note, and thus, its status as a mortgagee with the power of sale.  See Sullivan v. Kondaur Capital Corp., 85 Mass. App. Ct. 202, 210 (2014).

[8] Strawbridge correctly points out that the Supreme Judicial Court has stated that, in the context of a mortgage, the meaning of the word "nominee" is not clear.  See Eaton, supra at 590 n.29.  However, any lack of precision about the use of "nominee" does not call into question MERS's capacity to assign a mortgage as to which it is the named mortgagee.  See Haskin v. Deutsche Bank Natl. Trust Co., 86 Mass. App. Ct. 632, 642 (2014).  In fact, Eaton implicitly recognized such a capacity, notwithstanding the "nominee" designation.  462 Mass. at 581-584.  Strawbridge appears to suggest that the lack of a definition of "nominee" means that MERS cannot assign a mortgage.  We disagree.  The court merely stated that while the

does not preclude it from validly assigning the mortgage, nor does it limit MERS's power to exercise a right of sale.  See Haskins v. Deutsche Bank Natl. Trust Co., 86 Mass. App. Ct. 632, 642 (2014).  The plain language of the instruments and affidavits described above demonstrates that MERS and the Bank complied with the statutory requirements for the acquisition and assignment of the mortgage and note, and in the foreclosure of Strawbridge's property.

Strawbridge also argues that the Bank should be held to the same burden applicable to the foreclosing mortgagees in U.S. Bank Natl. Assn. v. Ibanez, 458 Mass. 637 (2011).  There, the Supreme Judicial Court held that a foreclosing entity must provide proof that it was the mortgage holder at the time of the notice of sale and foreclosure.  Id. at 651.  However, this case is distinguishable from Ibanez for two reasons.  First, unlike the mortgagees in Ibanez, the Bank possessed an assignment of the mortgage from MERS that predates the foreclosure notice sent to Strawbridge.  Second, Ibanez stated that because "there must be proof that the assignment was made by a party that itself held the mortgage . . . [, a] foreclosing entity may provide a complete chain of assignments linking it to the record holder of the mortgage, or a single assignment from the record holder of

meaning of "nominee" was unclear, "the use of the word may have some bearing on" the issue of agency.  Eaton, supra at 590 n.29.

the mortgage." Ibid. Here, the Bank possesses an assignment directly from MERS, the last holder of record. As such, it does not have to provide a "chain of assignments linking it to the record holder," ibid., of Strawbridge's mortgage, because such a "chain" contains only one link.[9]

Nor is Strawbridge assisted by her claim that the Bank lacked the power of sale because the assignment from MERS occurred after the date established in the PSA. As noted by the judge, Strawbridge lacks standing to assert such a violation. See Sullivan v. Kondaur Capital Corp., 85 Mass. App. Ct. 202, 205-206 (2014) (mortgagor has no standing to challenge assignment that renders assignment voidable; its standing is limited to "void" assignment). What rendered the assignment in Sullivan void was the failure to comply with the provisions of G. L. c. 183, § 54B. Id. at 211-213. Those requirements were met in this case. Here, an "Assistant Secretary and Vice President" of MERS executed and recorded a notarized assignment in full compliance with the requirements of § 54B and thus effectively passed title to the Bank. The failure to assign the mortgage before the date noted in the PSA would, at most, only make the assignment voidable between the parties to the

---

[9] Furthermore, because the mortgagees in Ibanez were the plaintiffs in those cases, they bore the burden of proof. In this case, Strawbridge, responding to a rule 12(b)(6) motion to dismiss, bears the burden of showing she has advanced a plausible claim.

transaction, not void as a matter of law. See Bank of N.Y.
Mellon Corp. v. Wain, 85 Mass. App. Ct. 498, 502 (2014) ("where
the foreclosing entity has established that it validly holds the
mortgage, a mortgagor in default has no legally cognizable stake
in whether there otherwise might be latent defects in the
assignment process").[10]

Despite Strawbridge's protestations to the contrary, she
asks this court to do precisely what previous plaintiffs have
asked: declare that the Bank, as a mortgagee in valid
possession of the mortgage and note, lacks the power of sale
granted to it in the mortgage instrument due to the fact that
the foreclosure occurred after the decision in Eaton.
Strawbridge's claim ultimately reduces to whether the Bank
validly held both the mortgage and the note at the time of the
foreclosure, thus qualifying the Bank as a mortgagee authorized

---

[10] Strawbridge attempts to frame her PSA argument as a trust
issue, claiming that because the assignment was not executed
prior to the date identified in the PSA, it was never validly
included as an asset of the CWABS trust and as such, the Bank,
in its capacity as trustee of the CWABS trust, has no authority
to foreclose. This argument is unavailing. Whether the PSA is
considered a contract or a trust document, Strawbridge is not a
party to that agreement or a third-party beneficiary thereof.
Consequently, where the assignment complies with the statutory
requirements, and there is no evidence to suggest the assignment
is void, Strawbridge does not have standing to challenge the
assignment. See Woods v. Wells Fargo Bank, N.A., 733 F.3d 349,
354 (1st Cir. 2013) ("[C]laims that merely assert procedural
infirmities in the assignment of a mortgage, such as a failure
to abide by the terms of a governing trust agreement, are barred
for lack of standing").

to exercise the power of sale for purposes of G. L. c. 244, § 14. See Eaton, 462 Mass. at 584. Strawbridge alleges that there are gaps in the documentation that the Bank relies on to establish its standing as a mortgagee. However, this does not detract from the fact that the Bank held the mortgage and the note at the time it exercised the power of sale and commenced the foreclosure.

Finally, we address an overarching contention by Strawbridge that this case is not governed by prior precedents because it is a "post-Eaton fact pattern." We disagree. Strawbridge argues that appellate decisions addressing whether an entity qualified as a "mortgagee" prior to the date of the Eaton decision no longer have precedential value. Strawbridge reads the court's decision in Eaton as standing for the proposition that the "conveyance of a mortgage no longer automatically conveys the power of sale, . . . there must be a nexus to an identified (MERS Member) note owner," and suggests further, as a result, that any transfer of a mortgage also must be accompanied by a transfer of the corresponding note to that same party in order to retain the power of sale. This argument rests on an incorrect reading of Eaton. Eaton clarified the term "mortgagee" to mean the holder of a mortgage "who also holds the underlying mortgage note." Ibid. The mortgagee need not have physical possession of the note, but need only "act[]

as the authorized agent of the note holder, to stand in the shoes of the mortgagee." Id. at 586. Here, at the time of foreclosure, the Bank possessed both the mortgage and the note, thus complying with the requirements of Eaton and G. L. c. 244, § 14.[11]

To the extent that the other arguments made by Strawbridge have not been addressed here, "they have not been overlooked. We find nothing in them that requires discussion." Department of Rev. v. Ryan R., 62 Mass. App. Ct. 380, 389 (2004) (quotation omitted).

Conclusion. In this case, Strawbridge fails to advance any factual basis for her claim[12] that the Bank lacks the authority

---

[11] There is no language in either Eaton or G. L. c. 244, § 14, that supports Strawbridge's arguments. Nowhere in Eaton does it say that prior cases in which the actions of a mortgagee were analyzed under the "previous statutory construction" of G. L. c. 244, § 14, are no longer applicable. The cases decided since Eaton have applied the full weight of Eaton's prospective holding when analyzing foreclosure actions by a mortgagee, including the requirement that the mortgagee demonstrate that it was in possession of the mortgage and the underlying note at the time of the foreclosure, and have not limited their reliance to the pre-Eaton understanding of a mortgagee, as Strawbridge argues.

[12] While the Supreme Judicial Court has not yet addressed whether, in an action such as this one, the plaintiff-mortgagor or the defendant-mortgagee bears the burden of proof, "because the facts concerning the relationship between the mortgagee and the note holder are far more readily available to them, and because the statutory requirements governing nonjudicial foreclosures must be strictly adhered to . . . , it can be argued that once the mortgagor makes a plausible showing that the mortgagee does not hold the note and is not acting on behalf

to exercise the power of sale, which was explicitly conferred on it by the terms of the mortgage. The record contains no evidence that, if true, would demonstrate the Bank's failure to comply with the requirements of a valid foreclosure. As such, the judge's allowance of the Bank's rule 12(b)(6) motion was not error.[13]

<u>Judgment affirmed</u>.

---

of the note holder, the mortgagee should carry the burden of proving that the foreclosure is valid under <u>Eaton</u>." <u>Khalsa</u> v. <u>Sovereign Bank, N.A.</u>, 88 Mass. App. Ct. 824, 829 n.7 (2016).

[13] The Bank requests that we award it attorney's fees and costs pursuant to G. L. c. 211A, § 15, and Mass.R.A.P. 25, as appearing in 376 Mass. 949 (1979). Because we have addressed at least some of the issues raised by Strawbridge only in unpublished opinions, we cannot say that her claims are "without merit." <u>Beaton</u> v. <u>Land Ct.</u>, 367 Mass. 385, 394 (1975). Accordingly, the Bank's request for attorney's fees and costs is denied.