# JOSEPH L. SULLIVAN & another[1] *vs.* KONDAUR CAPITAL CORPORATION.

No. 13-P-706.

Suffolk. February 4, 2014. - April 16, 2014.

Present: KAFKER, GREEN, & SULLIVAN, JJ.

*Mortgage,* Assignment, Foreclosure. *Practice, Civil,* Motion to dismiss, Standing. *Real Property,* Mortgage, Registered land, Certificate of title. *Assignment. Agency,* Scope of authority or employment. *Corporation,* Officers and agents. *Land Court.*

This court concluded that the plaintiff mortgagors had standing to challenge the validity of the title to the mortgage held by the defendant (who, claiming title by virtue of a purported assignment, had foreclosed on their property), where the legally cognizable interest the plaintiffs sought to protect by their complaint was their ownership interest in the property (rather than seeking as a nonparty to protect rights under the assignment itself) based on their claim that the defendant's purported foreclosure was void by reason of its lack of legal authority to conduct it. [205-206]

This court concluded that there was no merit to the assertion of a defendant mortgagee that, by virtue of the issuance of a transfer certificate of title in its name, the plaintiff mortgagors were precluded from challenging the validity of the defendant's title to the parcel of registered land on which the defendant had foreclosed (claiming title in the mortgage under a purported assignment), where the defendant was subject to a challenge to its certificate of title based on a break in the chain of mortgage assignments, given that the defendant was required as the foreclosing mortgagee to establish its title to the mortgage by reference to instruments of assignment transferring the mortgage to it, and accordingly was fairly charged with knowledge of any deficiencies in the effectiveness of the assignment instruments on which its claim of title was based. [206-208]

This court concluded that there was no merit to the contention by the plaintiff mortgagors challenging the defendant's foreclosure of their property that the entity from which the mortgage was purportedly assigned to the defendant held the mortgage solely as nominee and appeared to have held no ownership interest in the debt secured by the mortgage. [208-210]

A Land Court judge erred in allowing the defendant mortgagee's motion to dismiss a civil action brought by the plaintiff mortgagors challenging the defendant's foreclosure of their property, where nowhere on the face of the instrument purporting to assign the mortgage to the defendant was there

---

[1]Mary R. Sullivan.

any indication or evidence that the individual signatory was, or in any manner purported to be, an officer or other authorized agent of the entity purporting to assign the mortgage. [211-213]

CIVIL ACTION commenced in the Superior Court Department on March 8, 2010.

After transfer to the Land Court Department, a motion to dismiss was heard by *Harry M. Grossman*, J.

*Rockwell P. Ludden* for the plaintiffs.

*David M. Rosen* for the defendant.

GREEN, J. In this appeal, the plaintiffs, Joseph L. and Mary R. Sullivan (Sullivans), challenge the title of the defendant, Kondaur Capital Corporation (Kondaur), to the Sullivans' former residence, based on their contention that Kondaur did not hold a valid interest in the mortgage it foreclosed on the property in October, 2009. A judge of the Land Court allowed Kondaur's motion to dismiss the Sullivans' amended verified complaint, and thereafter denied (on grounds of futility) the Sullivans' motion to further amend their complaint. Though several of the Sullivans' challenges are without merit, we conclude that the complaint sufficiently stated a claim that Kondaur's title to the mortgage was defective at the time of the foreclosure, and reverse the judgment.

*Background.* We draw the following factual background from the allegations in the Sullivans' verified amended complaint.[2] On or about August 16, 2004, the Sullivans acquired title to property located at 98 Wild Hunter Road in Dennis (property). The property is registered land, and upon registration of the deed conveying the property to them, certificate of title no. 174074 issued in their names, evidencing their title. On January 11, 2006, the Sullivans executed a mortgage, conveying the property to Mortgage Electronic Registration Systems, Inc. (MERS), "solely as nominee for [WMC Mortgage Corp. (WMC)] and [WMC's] successors and assigns," to secure payment of a promissory note the Sullivans executed in favor of

[2]The original complaint is not in the record. From the docket it appears that the Sullivans amended the original complaint before Kondaur filed a responsive pleading, as authorized by Mass.R.Civ.P. 15(a), 365 Mass. 761 (1974).

WMC. The mortgage thereafter was duly filed for registration with the Barnstable registry district of the Land Court. By instrument dated May 21, 2008 (first assignment), MERS purported to assign the mortgage to Saxon Mortgage Services, Inc. (Saxon).[3] Thereafter, by instrument dated February 12, 2009 (second assignment), Saxon purported to assign the mortgage to Kondaur. Both assignments were duly filed for registration with the Barnstable registry district of the Land Court.[4]

On October 15, 2009, acting in exercise of the statutory power of sale contained in the mortgage, Kondaur foreclosed on the property and thereafter executed, and filed for registration, a foreclosure deed purporting to convey the property to itself.[5] Kondaur thereafter commenced a summary process action in the Orleans Division of the District Court Department; that action concluded with the entry of an agreement for judgment between the parties, in which the Sullivans agreed to surrender possession of the property to Kondaur but reserved their rights to challenge Kondaur's title to the property.

By complaint dated March 9, 2010, after commencement but before conclusion of Kondaur's summary process action, the Sullivans commenced an action in the Superior Court, seeking declaratory and injunctive relief based on their claim that Kondaur did not hold a valid interest in the mortgage at the time of the foreclosure, and that it accordingly was without valid legal authority to exercise the statutory power of sale contained in the mortgage. A judge of the Superior Court endorsed a memorandum of lis pendens, but thereafter transferred the matter to the Land Court, under G. L. c. 212, § 26A, because the complaint concerned claims of title to registered land over which the Land Court has exclusive jurisdiction. See G. L. c. 185, § 1($a^{1}/_{2}$); *Feinzig* v. *Ficksman*, 42 Mass. App. Ct. 113, 115-117 (1997). As we observed above, a judge of the Land Court thereafter allowed Kondaur's motion to dismiss the complaint, and denied

---

[3]Though executed on May 21, 2008, the assignment stated that it "has an effective date of December 12, 2007."

[4]We reserve description of certain other details of the assignments to our discussion of the Sullivans' challenges to their validity.

[5]Other than their contentions that Kondaur did not acquire valid title to the mortgage prior to the foreclosure, the Sullivans do not contend in this appeal that Kondaur failed to conduct the foreclosure in accordance with law.

the Sullivans' motion to further amend the complaint. This appeal followed.

*Discussion.* The essence of the Sullivans' complaint is that Kondaur's title to the mortgage was defective because each of the two assignments of the mortgage was defective for various reasons, discussed in more detail below. Before considering the Sullivans' claims, however, we first address Kondaur's contention that the Sullivans are without standing to raise a question of defects in assignments to which they are not a party, as well as its contention that the Sullivans are precluded from raising any question concerning Kondaur's title to the property by virtue of the issuance of certificate of title no. 190346 in Kondaur's name on December 21, 2009, evidencing its title to the property.[6]

1. *Standing of a mortgagor to challenge the validity of a mortgage assignment.* Observing that the Sullivans are neither parties to nor intended beneficiaries of the first assignment or the second assignment, Kondaur contends that they are without standing to challenge the validity of either instrument. It is of course true that a nonparty who does not benefit from a contract generally is without standing to enforce rights under it. See, e.g., *Cumis Ins. Soc., Inc.* v. *BJ's Wholesale Club, Inc.,* 455 Mass. 458, 464 (2009). However, that is not the position the Sullivans occupy, since they are not seeking to enforce any rights under either assignment. Instead, by their complaint they seek to challenge Kondaur's claim of title to the property the Sullivans formerly owned, which derives from foreclosure of the mortgage Kondaur claims to have acquired by virtue of the first and second assignments. Kondaur held legal authority to conduct the foreclosure, under the statutory power of sale contained in the mortgage, only if it held a valid title to the mortgage at the time it gave the notice of foreclosure required under G. L. c. 244, § 14, and at the time it exercised the power of sale. See *U.S. Bank Natl. Assn.* v. *Ibanez,* 458 Mass. 637, 647-648 (2011). If it did not hold a valid title to the mortgage at

---

[6]Kondaur also asserts that the Sullivans' failure to challenge the validity of the assignments in its previous Superior Court action, seeking permission to foreclose under the Servicemembers Civil Relief Act, operates as a bar to their ability to raise such a challenge in the present action, under principles of claim preclusion. It does not. See *HSBC Bank USA, N.A.* v. *Matt,* 464 Mass. 193, 198-199, 204 (2013).

the relevant times, the foreclosure would be void, as would Kondaur's claim to have extinguished the Sullivans' equity of redemption. *Id.* Put another way, the legally cognizable interest the Sullivans seek to protect by their complaint is their ownership interest in the property, based on their claim that Kondaur's purported foreclosure was void by reason of its lack of legal authority to conduct it.[7] We accordingly conclude that the Sullivans have standing to challenge the validity of the assignments by which Kondaur claims to have acquired the mortgage.[8]

2. *Registered land.* There is likewise no merit to Kondaur's assertion that the Sullivans are precluded from challenging the validity of its title by virtue of the issuance of a transfer certificate of title in its name prior to the commencement of this action.[9]

---

[7]Our conclusion applies solely to a mortgagor's challenge to an assignment asserting that it is void. A deficiency in an assignment that makes it merely voidable at the election of one party or the other would not automatically invalidate the title of a foreclosing mortgagee, and accordingly would not render void a foreclosure sale conducted by the assignee or its successors in interest.

[8]We note that our conclusion that the Sullivans have standing to challenge Kondaur's title to the mortgage (and, consequently, its legal authority to foreclose their equity of redemption) is consistent with that of the United States Court of Appeals for the First Circuit in *Culhane* v. *Aurora Loan Servs. of Neb.*, 708 F.3d 282, 291 (1st Cir. 2013). Compare *Wilson* v. *HSBC Mort. Servs., Inc.*, 744 F.3d 1, 14 (1st Cir. 2014) (no standing where homeowners' complaint alleged that officer who executed assignment on behalf of assignor was also an officer of assignee and executed assignment on behalf of the latter).

[9]It is unclear whether Kondaur's argument on this point is properly before us. Though Kondaur made the argument to the Land Court judge in a supplemental brief filed in response to the Sullivans' motion to further amend their complaint, it merely asserted in that brief that a new certificate of title had issued in its name; the brief does not include a copy of the certificate itself as an exhibit, the Sullivans did not rely on it in framing their complaint, and the Land Court judge disposed of the case on the basis of Kondaur's previously filed motion to dismiss (without, in other words, treating the motion as one for summary judgment, based on an expanded record, as contemplated under Mass.R.Civ.P. 12[b], 365 Mass. 754 [1974], and without addressing the argument in either of his memoranda of decision). Compare *Marram* v. *Kobrick Offshore Fund, Ltd.*, 442 Mass. 43, 45 n.4 (2004). Kondaur's brief on appeal includes a copy of the new certificate, in an addendum, but there is no indication that it was entered in evidence in the Land Court. We nonetheless address the argument in the exercise of our discretion, because the Sullivans do not dispute Kondaur's factual assertion that a new certificate of title issued in its name, instead responding (both here and in the Land Court) to the substance of the legal argument.

See G. L. c. 185, § 54.[10] To be sure, "the underlying purpose of title registration is to protect the transferee of a registered title." *Wild* v. *Constantini*, 415 Mass. 663, 668 (1993), quoting from *Kozdras* v. *Land/Vest Properties, Inc.*, 382 Mass. 34, 44 (1980). However, the conclusiveness of a certificate of title is not entirely without exception. For example, G. L. c. 185, § 45, allows "any person deprived of land, or of any estate or interest therein," to challenge a judgment of registration obtained by fraud by complaint filed within one year after entry of the judgment, provided no innocent purchaser for value has acquired an interest during the intervening time. Similarly, G. L. c. 185, § 62, provides that, following the original judgment of registration, "any subsequent registration procured by the presentation of a forged deed or other instrument shall be null and void." In addition, the Supreme Judicial Court has recognized "two exceptions to the rule that holders of a certificate of title take 'free from all encumbrances except those noted on the certificate,' " applicable in circumstances where facts described on the certificate of title would prompt a reasonable purchaser to investigate further other certificates of title, documents, or plans in the registration system, or if the purchaser has actual knowledge of a prior unregistered interest. *Doyle* v. *Commonwealth*, 444 Mass. 686, 693 (2005). See *Jackson* v. *Knott*, 418 Mass. 704, 711 (1994). More broadly, G. L. c. 185, § 114, authorizes any "registered owner or other person in interest" to bring a motion to correct a certificate of title upon various grounds, including "that any error or omission was made in entering a certificate or any memorandum thereon," provided that "nothing shall be done or ordered by the court which shall impair the title or other interest of a purchaser holding a certificate for value and in good faith." In *Doyle* v. *Commonwealth*, *supra* at 695, the Supreme Judicial Court held that the authority established under § 114 extended to cancellation of an erroneously issued certificate of title, where the error was apparent on the face of the certificate; because the error was apparent from documents referenced on the certificate and available in the

---

[10]In pertinent part, G. L. c. 185, § 54, provides that "[t]he original certificate [of title] . . . shall be conclusive as to all matters contained therein, except as otherwise provided in this chapter."

registration system, the purchaser of the lot did not "enjoy the status of a purchaser holding its certificate in good faith."

In the present case, we are not confronted by an innocent third party who purchased the property for value. As discussed above, as the foreclosing mortgagee Kondaur was required to establish its title to the mortgage by reference to instruments of assignment transferring the mortgage to it following the Sullivans' conveyance of the mortgage to MERS in the first instance. Accordingly, it is fairly charged with knowledge of any deficiencies in the effectiveness of the assignment instruments on which its claim of title is based, and is subject to a challenge to its certificate of title based on a break in the chain of mortgage assignments.[11]

3. *Validity of the mortgage assignments.* Having concluded that the Sullivans have legal standing to challenge the validity of the assignments, and that their challenges are not barred by Kondaur's certificate of title, we turn to the grounds on which they contend the assignments are deficient.[12]

a. *Validity of assignment by MERS as nominee.* Observing

---

[11]We reject Kondaur's suggestion that G. L. c. 185, § 70, implicitly requires any such challenge to be brought before issuance of a new certificate of title following foreclosure, by providing that "this chapter shall not prevent the mortgagor or other person in interest, *prior to the entry of a new certificate of title*, from directly impeaching, by bill in equity or otherwise, any foreclosure proceedings affecting registered land" (emphasis added). The quoted language appears at the end of a sentence describing the method by which the purchaser at a foreclosure sale may obtain a new certificate of title by registering the foreclosure deed and need not, in our view, be applied to limit a challenge in circumstances such as those in the present case, where the purchaser at the foreclosure sale also conducted the sale under a claim that it held a valid title to the mortgage.

[12]Certain of the challenges raised by the Sullivans in the Land Court are absent from their brief on appeal. For example, they argued before the Land Court that the first assignment (from MERS to Saxon) was invalid because it included a statement that it had an effective date before the date of its execution, in an apparent attempt to effect the assignment on a date preceding the first statutorily required foreclosure notice. See *U.S. Bank Natl. Assn.* v. *Ibanez,* 458 Mass. 637, 654 (2011). The claim is waived, but is without merit in any event, because Saxon did not proceed with the foreclosure noticed before the date of the first assignment, and Kondaur commenced its foreclosure anew after the date of the second assignment. Likewise waived but without merit is the Sullivans' argument to the Land Court that the second amendment is invalid because it is missing a corporate seal. See G. L. c. 183, § 1A. Con-

that MERS held the mortgage solely as nominee for WMC and appears to have held no ownership interest in the debt secured by the mortgage, the Sullivans contend that any assignment by MERS to another entity is invalid unless supported by evidence of authorization of that assignment by the owner of the debt. The argument is without merit.[13]

We begin by observing that until quite recently, a foreclosing mortgagee was not required to demonstrate ownership of the debt secured by the mortgage, principally because the note typically is not recorded. See *Eaton* v. *Federal Natl. Mort. Assn.*, 462 Mass. 569, 587-588 (2012). The rule announced in *Eaton* was given only prospective effect, to foreclosure sales for which the mandatory notice of sale was given after the date of that opinion (June 22, 2012).[14] Accordingly, to the extent the Sullivans' challenge to Kondaur's legal status as "mortgagee" (with authority to foreclose the mortgage) rests on Kondaur's failure to demonstrate unity of legal and equitable interest in the loan by reference to the unrecorded mortgage note or any unrecorded assignments of the equitable interest in the mortgage itself, they are without benefit of the holding in *Eaton* to do so.[15] Moreover, their argument would represent a significant expansion of the *Eaton* rule, insofar as they suggest that a

versely, the Sullivans did not raise before the Land Court their claims that the assignments are unconstitutional (on grounds of substantive due process, procedural due process, and equal protection), and we decline to consider them for the first time on appeal.

[13]The Sullivans' argument on this point takes various forms and is difficult to decipher. They observe that their mortgage loan was included in a pool with other mortgage loans and then securitized, suggesting that WMC assigned its equitable interest in the loan to another lender, who in turn assigned it at least once more, before MERS assigned the mortgage to Saxon. Accordingly, the argument goes, MERS could not validly have assigned the mortgage, because WMC (the entity as nominee for which MERS acquired its bare legal interest) then held no equitable interest in the loan. More broadly, they appear to suggest that any separation of the legal and ownership interests in a mortgage is inherently invalid under Massachusetts law. We address both variants.

[14]Subsequently, in *Galiastro* v. *Mortgage Elec. Registration Sys., Inc.*, 467 Mass. 160, 167 (2014), the Supreme Judicial Court extended application of the *Eaton* rule to "cases that were pending on appeal in the Appeals Court when the rescript in *Eaton* issued, and in which the litigants asserted and preserved a claim that a foreclosure by power of sale is invalid where the foreclosing mortgagee does not hold the note."

[15]Notice of the foreclosure sale in the present case was given on September

"mortgagee" must hold both legal and equitable interest in the loan not only at the time of foreclosure but at the time of any previous transfers of the recorded mortgage interest.

In any event, as *Eaton* itself recognized, the legal interest in a mortgage permissibly may be separated from the beneficial or equitable interest in the debt it secures; in such instances the party holding the bare legal title to the mortgage holds it in trust for the party owning the debt. See *id.* at 576-577. Accordingly, the Sullivans' challenge is without merit to the extent that it suggests that MERS's interest in the mortgage was inherently invalid because it was separated from ownership of the underlying debt. Moreover, even at the time of foreclosure it is not essential that the holder of a bare legal title to the mortgage physically possess the note; all that is required is that it be able to demonstrate either that it holds the underlying note or acts as an authorized agent for the note holder.[16] *Id.* at 586. In short, although a foreclosing mortgagee must demonstrate an unbroken chain of assignments in order to foreclose a mortgage, see *U.S. Bank Natl. Assn.* v. *Ibanez, supra* at 651, and now must also demonstrate that it holds the note (or acts as authorized agent for the note holder) at the time it commences foreclosure, see *Eaton, supra,* nothing in Massachusetts law requires a foreclosing mortgagee to demonstrate that prior holders of the record legal interest in the mortgage also held the note at the time each assigned its interest in the mortgage to the next holder in the chain. It is accordingly of no moment that WMC may not have held any ownership interest in the note or mortgage at the time MERS assigned the mortgage to Saxon, because MERS at the time of the first assignment still held the record legal interest in the mortgage.[17,18]

---

16, 2009. The Sullivans commenced the action in the Superior Court on March 8, 2010, and (following transfer to the Land Court) judgment entered on January 25, 2013. The case entered on the docket of the Appeals Court on April 29, 2013.

[16]Though the note itself is not in the record, Kondaur represents in its brief on appeal that it is in possession of the original note, endorsed in blank by WMC.

[17]We note that our conclusion in this respect is again consistent with that reached by the First Circuit Court of Appeals in *Culhane* v. *Aurora Loan Servs. of Neb., supra* at 291-293.

[18]Because the proposed second amended complaint merely sought to elaborate

b. *Authority of the signatory to the second assignment.* The Sullivans fare better (at least for purposes of surviving a motion to dismiss) with their contention that the second assignment is deficient because it does not demonstrate the authority of the individual who executed it on Saxon's behalf. The second assignment identifies Saxon as the assignor in its first paragraph, identifies Kondaur as the assignee in its third paragraph, and identifies the mortgage as the assigned interest in its fourth paragraph. The assignment is signed by an individual named Natalie Flowers, whose signature appears on a line beneath Saxon's corporate name. No designation of Flowers's office or other capacity appears next to her signature. The paragraph preceding the signature block reads as follows:

> "IN WITNESS WHEREOF, Mortgage Electronic Registration Systems, Inc. as nominee for WMC Mortgage Corp. has caused these presents to be signed by its duly authorized officer and its corporate seal to be hereunto affixed, this 12 day of February, 2009."

Following the signature block, the assignment includes an acknowledgment by a Texas notary public, attesting that "on 2-12-2009 before me, Jimmie Hernandez, personally appeared Natalie Flowers personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument."

Ordinarily, under Massachusetts law, an instrument transferring an interest in land held by a business corporation and executed by an individual officer will bind the corporation only if the officer is authorized or directed by the board of directors

the same claim, it did not (as the Sullivans contend) address each deficiency cited by the Land Court judge in the amended verified complaint he dismissed. The judge accordingly did not abuse his discretion in denying (on grounds of futility) the Sullivans' motion to further amend their complaint. We likewise discern no error or abuse of discretion by the Land Court judge in his dismissal of those counts of the Sullivans' complaint that are beyond the Land Court's limited jurisdiction.

so to do. See G. L. c. 156D, § 8.41. Recordation of such an instrument in turn requires evidence of the authorizing vote and incumbency of the officer, typically in the form of a certificate by the secretary or clerk of the corporation.[19] See generally Crocker's Notes on Common Forms, §§ 318-319 (10th ed. 2013). However, in the case of various instruments affecting a recorded mortgage (including, as pertinent to the present case, an assignment of the mortgage) the formal requirements are markedly more relaxed. Pursuant to G. L. c. 183, § 54B, such instruments shall bind the entity assigning or discharging the mortgage if "executed before a notary public, justice of the peace or other officer entitled by law to acknowledge instruments, whether executed within or without the commonwealth, by a person purporting to hold the position of president, vice president, treasurer, clerk, secretary, cashier, loan representative, principal, investment, mortgage or other officer, agent, asset manager, or other similar office or position, including assistant to any such office or position, of the entity holding such mortgage," without need of any vote affirming such authority or further evidence of their status as such an officer.[20]

Even viewed against such relaxed requirements, however, the second assignment falls short. We reiterate that Saxon was the assignor under the second assignment. The only reference to the status of the individual signatory to the second assignment, Natalie Flowers, as an officer of any kind of any entity is in the paragraph immediately preceding the signature block, which recites that MERS "has caused these presents to be signed by

---

[19]An exception exists for instruments signed by the president or vice-president *and* the treasurer or assistant treasurer, which require neither authorizing vote nor evidence of incumbency. See G. L. c. 155, § 8; G. L. c. 156D, § 8.46. See also Eno & Hovey, Real Estate Law, § 4.39 (4th ed. 2004); Title Standard No. 11 of the Real Estate Bar Association for Massachusetts (2009), as appearing in Eno & Hovey, Real Estate Law c. 58, at 336 (Supp. 2013).

[20]Section 54B was initially enacted by St. 1992, c. 410, § 1, and its scope was expanded by St. 2006, c. 63, § 2. Legislative history suggests that the purpose of the section, and its subsequent expansion, was to address problems that often arose in recording discharges or assignments executed by non-Massachusetts corporations who were unfamiliar with Massachusetts recording formalities, particularly following the growth of the secondary market and securitization of mortgages. See, e.g., testimony of E. Christopher Kehoe, presented May 18, 2005, to the Joint Committee on Financial Services concerning Senate Bill 624.

its duly authorized officer." While we agree with the Land Court judge that the presence of MERS in that reference is likely a scrivener's error which need not itself invalidate the assignment, the absence of any other indication that Flowers is or was an officer of Saxon fails to satisfy even the very broad latitude afforded by § 54B. Put simply, nowhere on the face of the instrument is there any indication or evidence that Flowers was, or in any manner purported to be, an officer or other authorized agent of Saxon.[21] Nor can the notarial acknowledgment supply the missing evidence; it merely recited that Flowers acknowledged that she executed the assignment "in [her] duly authorized capacity," without describing what that capacity might be, or with whom. Proof of Flowers's authority to assign the mortgage on Saxon's behalf (to the extent she was authorized) accordingly requires more evidence than appears either on the face of the second assignment or in the record. Sadly, the second assignment is further illustration of the phenomenon observed in the concurrence to *U.S. Bank Natl. Assn.* v. *Ibanez, supra* at 655 (Cordy, J., concurring) ("what is surprising about these cases is . . . the utter carelessness with which the [foreclosing lenders] documented the titles to their assets"). We accordingly are constrained to reverse the judgment of dismissal, and remand the matter to the Land Court for further proceedings consistent with this opinion.[22]

*So ordered.*

---

[21]Kondaur suggests we should infer that Flowers's act in signing the document on the signature line beneath Saxon's name constituted an assertion that she held one of the offices listed in § 54B and was authorized to act on its behalf. Were we to do so, we would render superfluous much of the language contained in the statute. If the Legislature intended to provide that any individual could bind a corporate mortgagee by signing a mortgage assignment on its behalf, without any indication of her office or authority, it could have done so with far less detail than set forth in the statute it enacted.

[22]We note that the deficiency in the second assignment may well be one of form rather than of substance, and may therefore be susceptible of cure of the type described in *U.S. Bank Natl. Assn.* v. *Ibanez, supra* at 654 ("Where the earlier assignment is not in recordable form or bears some effect, a written assignment executed after foreclosure that confirms the earlier assignment may be properly recorded").