Drechsler, Thomas, J.
INTRODUCTION
The plaintiffs, Louis F. O’Neil and Marcia J. O’Neil (collectively, the “O’Neils”), own property located at 1 Twin Springs Drive, in Saugus, Massachusetts (the “Property”). They filed the current action against the defendant, The Bank of New York Mellon (“BNYM”), as trustee for the Certificateholders of CWALT, Inc., Alternative Loan Trust 2007-J1 Mortgage Pass Through Certificates, Series 2007-J1 (the “CWALT Trust”), to prevent BNYM from foreclosing on the Property. In Count I, the O’Neils seek a declaration from the court stating that BNYM does not have standing to foreclosure under G.L.c. 244, § 14 as well as an order granting them recovery of expenses, costs, and monetary damages associated with BNYM’s initiation of the foreclosure process. In Count II, the O’Neils assert a claim for slander of title. This matter is now before the court on BNYM’s Motion to Dismiss. For the reasons explained herein, the Motion to Dismiss will be ALLOWED.
BACKGROUND
The O’Neils purchased the Properly at some point prior to 2007. Thereafter, on January 7, 2007, the O’Neils refinanced their mortgage, executing a promissory note (the “Note”) in the amount of $724,800.00 made payable to their lender, Countrywide Home Loans, Inc. d/b/a America’s Wholesale Lender (“AWL”). On that same day, the O’Neils executed a mortgage (the “Mortgage”) in favor of Mortgage Electronic Registrations Systems, Inc. (“MERS”), in order to secure payment of the Note. Exhibit B.
The Mortgage identified the “Borrower” as the O’Neils and the “Lender” as AWL. Exhibit B. It also, however, expressly designated MERS as “the mortgagee” and stated, in connection with this designation, that “MERS is a separate corporation that is acting solely as a nominee for Lender and Lender’s successors and assigns.” Exhibit B. Next, the Mortgage states as follows:
This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower’s covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender’s successors and assigns) and to the successors and assigns of MERS, with power of sale, the . . . [Property] [.]
Exhibit B. Additionally, the Mortgage stated that:
Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but if necessary to comply with law or custom, MERS (as nominee for Lender and Lender’s successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender!.]

Exhibit B.

On September 19, 2011, MERS executed a document entitled “ASSIGNMENT OF MORTGAGE” (the “Assignment”). Exhibit C. The assignment identified the “Original Lender” as MERS “as nominee for . . . [AWL]” and the “Original Borrower(s)” as the O’Neils. Exhibit C. Diana Pham, an individual identified as MERS’s “Assistant Secretary,” signed the Assignment on behalf of MERS. Exhibit C. Following its execution, the Assignment was notarized and recorded at the Registry of Deeds. Exhibit C. In the Assignment, MERS purported to “grant, sell, assign, transfer and convey” to BNYM, in accordance with a Pooling and Servicing Agreement (the “PSA”) between AWL and BNYM, “all beneficial interest under [the Mortgage] . . . together with the [N]ote(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Mortgage.” Exhibit C. The PSA had a closing date of June 30, 2006, which date was more than five years before the Assignment was executed. Exhibit F.
In 2014, as the O’Neils had been in default since sometime in 2011, the loan servicer, Bayview Loan Servicing (“BLS”), initiated foreclosure proceedings on behalf of BNYM.[4] ExhibitE. On October 16, 2014, Dara Foye (“Foye”), a BLS “Document Coordinator,” executed a “Certificate Pursuant to Massachusetts 209 CMR 18.21A(2)” (the “Certificate”), certifying that BNYM was the “owner of both the Mortgage and the Note[.]” Exhibit D. The next day, on October 17, 2014, Foye executed a document entitled “AFFIDAVIT PURSUANT TO M.G.L. Ch. 244, §§35B and 35C” (the “Chapter 244 Affidavit”), attesting that BNYM was “the authorized agent of the holder of said promissoiy note for purposes, inter alia, of foreclosing said mortgage on behalf of said note holder.” BNYM’s Motion to Dismiss, Exhibit 2. The Chapter 244 Affidavit was notarized and recorded at the Registry of Deeds.
*10 By correspondence dated November 19, 2014, BNYM, through its counsel, sent the O’Neils a deficiency notice as well as a notice informing them that it planned to conduct a foreclosure sale on December 19, 2014. Exhibit E. On December 12, 2014, the O’Neils filed the current action seeking to stop the foreclosure proceedings. Around that same time, they sought an injunction prohibiting BNYM from proceeding with foreclosure, which the court (Lang, J.) denied on December 29, 2014, after hearing.
Following the court’s preliminary injunction decision, BNYM filed the pending Motion to Dismiss pursuant to Mass.R.Civ.P. 12(b)(6). After hearing on May 29, 2015, the court (Drechsler, J.) issued an order (the “May Order”) informing the parties that the Motion to Dismiss would be treated as a motion for summary judgment. In the May Order, the court gave the parties additional time to supplement the record with any additional materials relevant to a motion under Mass.RCiv.P. 56. The O’Neils chose not to supplement the record with any additional materials. BNYM, however, filed Defendant’s Post-Hearing Submission, which included an affidavit from Dara Foye (the “Foye Affidavit"), dated June 19, 2015.
In the Foye Affidavit, Foye attests to the following information: she is a document coordinator for BLS; she is responsible for assisting litigation attorneys regarding loans BLS services; she is familiar with the business records BLS maintains; BLS is the servicer for the O’Neils’ mortgage loan; pursuant to the Assignment, BNYM is the holder of the Mortgage as well as the holder of the Note; since January 7, 2015, Bank of America has had actual possession of the Note on behalf of BNYM; prior to January 7, 2015, BLS’s “Custodian” had actual possession of the Note on behalf of BNYM; and she executed both the Certificate and the Chapter 244 Affidavit in her role as document coordinator.
In addition, in the Foye Affidavit Foye identifies an error she made when executing the Chapter 244 Affidavit. According to Foye, rather than checking the box indicating BNYM is “the authorized agent of the holder of said promissory note for purposes, inter alia, of foreclosing said mortgage on behalf of said note holder,” she should have checked the box indicating BNYM is “the holder of the promissory note secured by the above mortgage,” which is consistent with the Certification as well as BLS’s other business records. Foye states she fixed this mistake “by executing a corrective affidavit with the correct information,” which will be recorded at the Registry of Deeds.
DISCUSSION
The O’Neils filed two claims in this action. In Count I, they seek a declaration from the court preventing BNYM from proceeding with foreclosure. In Count II, the O’Neils assert a claim for slander of title. In support of these claims, the O’Neils argue BNYM has no standing to foreclose, under G.L.c. 244, §14, because it has not established that it is the holder of both the Mortgage and the Note, as required following the Supreme Judicial Court’s decision in Eaton v. Federal Nat’l Mortgage Assoc., 462 Mass. 569 (2012). In addition, the O’Neils argue that, for a variety of reasons discussed in more detail below, the Assignment is not valid. BNYM states that it is in full compliance with Eaton and that the Assignment, wherein MERS assigned it the Mortgage and Note, is a valid and legally binding assignment.
I. Standard of Review
Under Mass.R.Civ.P. 12(b), “if . . . matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56" and ’’all parties shall be given reasonable opportunity to present all material made pertinent to ... a motion by Rule 56." Here, in the May Order, the court ordered that BNYM’s Motion to Dismiss be treated as a motion for summary judgment and provided the parties with additional time to supplement the record. In accordance with the May Order, the court analyzes the pending Motion to Dismiss as a motion for summary judgment.
Summary judgment is appropriate where there are no genuine issues of material fact and the moving parly is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Corr., 390 Mass. 419, 422 (1983). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and that the summary judgment record entitles the moving parly to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence negating an essential element of the opposing parly’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Comm’ns Corp., 410 Mass. 805, 809 (1991).
Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond with evidence of specific facts establishing the existence of a genuine dispute. Pederson, 404 Mass, at 17. An adverse party cannot defeat a motion for summary judgment merely by resting on its pleadings; rather, it must set forth specific facts showing that there is a genuine issue for trial. Mass.R.Civ.P. 56(c). “Conclusory statements, general denials, and factual allegations not based on personal knowledge [are] insufficient.” Cullen Enters., Inc. v. Massachusetts Prop. Ins. Underwriting Ass’n, 399 Mass. 886, 890 (1987), quoting Madsen v. Erwin, 395 Mass. 715, 721 (1985). The court views the evidence in the light most favorable to the nonmoving party, but it does not weigh evidence, assess credibility, or find facts. Attorney Gen. v. Bailey, 386 Mass. 367, 370-71 (1982).
*11 II. Analysis
A. Eaton v. Federal Nat’l Mortgage Assoc., 462 Mass. 569 (2012)
The O’Neils contend BNYM has not complied with the statutory power of sale provision, G.L.c. 244, §14, as that provision has been interpreted by the Supreme Judicial Court in Eaton. More specifically; the O’Neils argue that, under Eaton, a “mortgagee” entitled to exercise the power of sale set forth in G.L.c. 244, §14, must provide evidence that it is the holder of both the Mortgage and the Note and that, in this case, the evidence is insufficient to establish BNYM holds both the Mortgage and the Note. The court disagrees.
In Eaton, the Supreme Judicial Court stated that “the term ‘mortgagee’ as used in . . . [G.L.c. 244, §14] . . . refer[s] to the person or entity then holding the mortgage and also either holding the mortgage note or acting on behalf of the note holder.” 462 Mass, at 571, 584-85. According to the Court, this interpretation of the term “best reflects the essential nature and purpose of a mortgage as security for a debt.” Id. at 584. The O’Neils contend this holding requires that BNYM provide evidence that it physically owns the Note as well as the Mortgage. This argument requires an unwarranted expansion of the Eaton holding wherein the Supreme Judicial Court specifically stated “we do not conclude that a foreclosing mortgagee must have physical possession of the mortgage note in order to effect a valid foreclosure.” Id. at 586.
Here, the record evidence is more than adequate to establish that BNYM is a valid “mortgagee,” holding both the Mortgage and the Note. First, in the Assignment, recorded at the Registry of Deed, MERS “grant[ed], s[old], assign(ed), transfer [red], and convey [ed]” to BNYM “all beneficial interest under [the Mortgage] . . . together with the [N]ote[ ] and obligations therein described!.]” Second, in the Certificate, also recorded at the Registry of Deeds, Foye, in her capacity as document coordinator for BLS, certified that BNYM was the “owner of both the Mortgage and the Note[.]”[5] Third, in the Chapter 244 Affidavit, recorded at the Registry of Deeds, as well as in the corrected affidavit referenced in the Foye Affidavit, which was filed in connection with the current motion, Foye again attests that BNYM is the holder of both the Mortgage and the Note.[6]
Because Eaton does not require physical possession and expressly states that “a foreclosing mortgage holder may establish that it either held the note or acted on behalf of the note holder by filing an affidavit in the registry of deeds[,]” id. at 589 n.28, which BNYM has done, the O’Neils’ argument is without merit. The record evidence is sufficient to establish that BNYM is the holder of both the Mortgage and the Note and thus, sufficient to demonstrate BNYM is a “mortgagee” entitled to exercise the power of sale set forth in G.L.c. 244, § 14. Where BNYM has moved for summary judgment, it is the O’Neils’ responsibility to “go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.” Kourourvacilis v. General Motors Corp., 410 Mass. 706, 714 (1991). The O’Neils have wholly failed to meet this burden, despite the fact that the May Order afforded them additional time to supplement the record. There is no record evidence indicating that either the Mortgage or the Note is held by any entity other than BNYM.
B. The Assignment
Next, the O’Neils contend BNYM is not entitled to foreclose because the Assignment, wherein MERS purported to assign BNYM the Mortgage, is invalid. First the O’Neils contend MERS could not validly assign the Mortgage to BNYM because it is itself not a valid “mortgagee.” Second, they argue the Assignment is not valid because as “nominee” MERS can only act at the specific direction of the lender, AWL, and here, there is no evidence AWL directed MERS to assign the Mortgage to BNYM. For the reasons explained, both these arguments fail.
As to the first contention, the court fails to see how MERS’s status as “nominee” for AWL renders the Assignment invalid. While the Supreme Judicial Court has acknowledged that it is not entirely clear what the term “nominee” means as the term is used in the mortgage context, Eaton, 462 Mass. at 590 n.29, Galiastro v. Mortgage Electronic Registration Systems, Inc., 467 Mass. 160, 171 n.19 (2014), MERS’s designation as such does not preclude it from validly assigning the Mortgage. In Haskins v. Deutsche Bank National Trust Co., the Appeals Court plainly states, “there is ... no merit to the . . . claim that MERS is without capacity to execute a valid assignment of the mortgage (because it held a bare legal title to the mortgage [as nominee], separated from any beneficial interest).” 86 Mass.App.Ct. 632, 642 (2014) (internal citations omitted); see also Shea v. Federal Nat’l Mortgage Assoc., 2013 WL 7019646 *3-4 (Mass.Super. 2013) (Cosgrove, J.) [31 Mass. L. Rptr. 567]. In analyzing the present matter, the court sees no reason to depart from the Haskins decision. The fact that MERS executed the Assignment in its role as “nominee” for AWL does not invalidate the Assignment.
The O’Neils’ second argument also fails. Relying on Farmer v. Federal Nat’l Mortgage Assoc., 2013 WL 1976240 *9 (Mass.Super. 2013) (Fahey, J.) [31 Mass. L. Rptr. 204], the O’Neils contend that the Assignment is invalid because, as a nominee, MERS can only act at the specific direction of AWL, the lender, and here, there is no evidence AWL directed MERS to make the assignment to BNYM. The O’Neils’ reliance on Farmer is misplaced. First, the Farmer decision is not binding precedent as it is merely another Superior Court decision, which is currently on appeal. More significantly, the Farmer decision appears contrary to the *12 Appeals Court’s recent holding in Sullivan v. Kondaur Capital Corp., 85 Mass.App.Ct. 202 (2014).
In Sullivan, the Appeals Court specifically rejected the contention that “any assignment by MERS to another entity is invalid unless supported by evidence of authorization of that assignment by the owner of the debt.” Id. at 209. In reaching this conclusion, the Appeals Court went on to state that,
although a foreclosing mortgagee must demonstrate an unbroken chain of assignments in order to foreclose a mortgage . . . and now must also demonstrate that it holds the note (or acts as authorized agent for the note holder) at the time it commences foreclosure . . . nothing in Massachusetts law requires a foreclosing mortgagee to demonstrate that prior holders of the record legal interest in the mortgage also held the note at the time each assigned its interest in the mortgage to the next holder in the chain.
Id. at 210. Here, since the Appeals Court has expressly rejected the O’Neils’ contention and BNYM has met its burden to establish an “unbroken chain of assignments” (there has only ever been one assignment in this case, from MERS, the entity identified as the original mortgagee in the Mortgage, to BNYM), the O’Neils’ assertion that a valid assignment requires evidence that the lender directed MERS to execute the assignment is without merit.
C. The Pooling and Service Agreement
Here, the O’Neils argue that the Assignment is also invalid because it occurred in violation of the terms of the PSA between AWL and BNYM. In particular, the O’Neils contend that, in order to comply with the terms of the PSA, the Assignment, which was executed on September 19, 2011, should have been executed prior to June 30, 2006, the “closing date” identified therein. BNYN argues the O’Neils do not have standing to challenge the Assignment on this basis.
In Sullivan, while acknowledging that “a nonparty who does not benefit from a contract generally is without standing to enforce rights under it,” id. at 205, the Appeals Court held that, based on a “legally cognizable interest” in the property at issue, a mortgagor has standing to challenge an assignment of a mortgage premised upon a deficiency that renders the assignment “void.” Id. at 206. In making this decision, the Appeals Court emphasized that its “conclusion applies solely to a mortgagor’s challenge to an assignment asserting that it is void” and that a mortgagor has no standing with respect to a deficiency that merely renders the assignment voidable at the election of the parties to the transaction. Id. at 206 n.7. Thus, the success of the O’Neils’ argument turns on whether the failure to assign the Mortgage to BNYM before the closing date identified in the PSA renders the Assignment void or voidable.
Massachusetts draws a distinction between void and voidable assignments. Butler v. Deutsche Bank & Trust Co. of Americas, 2012 WL3518560 at *7 (D.Mass. 2012), citing Service Mortgage Corp. v. Welson, 293 Mass. 410 (1936). In Sullivan, the defect in the assignment made the assignment void—the certificate of assignment failed to demonstrate the authority of the individual who signed the assignment on behalf of the assignor, as it did not identify her position as an officer of the assignor, which is required by G.L.C. 183, §54B, the statutory provision governing assignment of mortgages. 85 Mass.App.Ct. at 211-14. Following Sullivan, in a case that is factually very similar to the current matter, the Appeals Court distinguished Sullivan and affirmed the trial court’s determination that the mortgagors lacked standing to contest the assignment of their mortgage because there was no basis for arguing the assignment was void. The Bank of New York Mellon Corp. v. Wain, 85 Mass.App.Ct. 490, 502-03 (2014).
In Wain, because the assignment complied with the requirements of G.L.c. 183, §54B—MERS was the holder of the mortgage at the time of the assignment, the assignment recited the name and the position of the person executing, i.e., signing, the assignment on behalf of MERS, and the assignment included an attestation that the signatory had personally appeared and executed the document before a notary—the Appeals Court concluded it was effective to pass title and not void. Id. at 503. According to the Court:
Because the record title holder of the mortgage satisfied the dictates of the statute governing the assignment of mortgages, the homeowners have no basis for arguing that the assignment is void. Regardless of whether any hidden problems they seek to raise might provide a basis for a third party to claim that the assignment was potentially voidable, the homeowners themselves have no right to raise such issues.
Id. at 504. Here, because the Assignment complies with the requirements set forth in G.L.c. 183, §54B—it was signed by a person identified as MERS’s “Assistant Secretary” and was notarized and recorded at the Registry of Deeds—it is effective to pass title. Id. At the very most, the failure to execute the Assignment prior to the closing date identified in the PSA renders the Assignment voidable by the parties to the PSA transaction, AWL or BNYM. Consequently, the O’Neils do not have standing to challenge the validity of the Assignment based upon a failure to comply with the terms of the PSA.[7]
D. Slander of Title
In Count II, the O’Neils assert a claim for slander of title, alleging BNYM “caused a false publication to be publically recorded . . . that purports to state that [BNYM] currently has ownership of. . . [the O’Neils j residence.” This claim appears to be premised upon the recording of the Assignment. “Slander of title, also referred to as the tort of ‘injurious falsehood,’ ... is defined as ‘a false and malicious statement, oral or written, made in disparagement of a person’s title to *13 real or personal property, causing him injury.’ ” Powell v. Steuens, 2004WL1047451 at *2 (Mass.Super. 2004) (Sikora, J.) [17 Mass. L. Rptr. 592] (internal citations omitted). “The action of slander is the willful recordation or publication of untrue material that disparages the title of another’s property.” Id. This claim fails. As discussed above, at length, the Assignment, transferring the Mortgage from MERS to BNYM, is a valid legally recognizable assignment.[8]
CONCLUSION/ORDER
For the reasons stated above, it is hereby ORDERED that BNYM’s Motion to Dismiss (Paper #15) be ALLOWED.

 Foreclosure proceedings did not begin until 2014 because, for a substantial portion of the time between 2011 and 2014, Mr. O’Neil was involved in Chapter 7 bankruptcy proceedings. These proceedings did not conclude until January 2014. According to the record, it appears that the O’Neils have not made payment since 2011.

 The O’Neils contend the Certificate is not sufficient to establish that BNYM is the holder of both the Mortgage and the Note, as the statements contained therein represent hearsay and unsupported legal conclusions. While the Certificate, alone, may have been insufficient to demonstrate BNYM holds both the Mortgage and the Note, when examined in conjunction with the other record evidence, such as the Assignment, the Chapter 244Affidavit, and the Foye Affidavit, it supplies additional support for the conclusion that BNYM validly holds both the Mortgage and the Note.

 Even if the O’Neils’ interpretation of Eaton is correct and BNYM is required to provide evidence establishing it has physical possession of the Note prior to foreclosure, in this case, BNYM has provided such evidence. In the Foye Affidavit, Foye attests that, since January 7, 2015, Bank of America has had actual possession of the Note on behalf of BNYM and/that, prior to that date, BNYM’s “Custodian” had possession of the Note.

 Although the O’Neils’ Opposition is less than articulate, it appears that they are attempting to frame their PSA argument as a trust issue, contending that because the Assignment was not executed prior to the closing date identified in the PSA, it was never validly included as an asset of the CWALT Trust and thus, BNYM, in its capacity as trustee of the CWALT Trust, has no authority to foreclose. The O’Neils have cited no legal authority in support of their position (despite having been granted additional time, in the May Order, to supplement the record) and the court does not view this argument as distinct from that set forth above. Whether the PSA is considered a plain contract or a trust document, the O’Neils are not parties to that agreement or third-party beneficiaries of that agreement. Consequently, where the Assignment comports with the requirements of G.L.c. 183, §54B and there is no evidence to suggest the Assignment is void, the O’Neils do not have standing to challenge the Assignment.

 Here, the .court notes that the O’Neils do not address Count II in their opposition to the pending motion. There is, in any case, no record evidence to support a claim of malicious intent.