NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-1269

GEORGE MENDES

vs.

SCOTT HALL & another.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following his purchase of a foreclosed property in Brockton (the property), plaintiff George Mendes brought a summary process action in the Housing Court against the occupant and former owner, Scott Hall.[2]  A judge partially allowed Mendes's motion for summary judgment on the issue of possession and, after a jury-waived trial, found that Mendes did not engage in an unlawful self-help eviction in violation of G. L. c. 186, § 14.  Hall appeals, claiming that the judge erred in granting summary judgment because the notice of default and the chain of

_____

[1] Kristy Hall.

[2] While Kristy Hall was a defendant below, she does not appear to have participated in the litigation and was not a party to this appeal.

title were defective and because the promissory note was unenforceable. Hall further contends that the evidence introduced at the jury-waived trial established that Mendes interfered with his right to quiet enjoyment in violation of G. L. c. 186, § 14. We affirm.

Background. In 2003, Hall and his sister took out a loan on the property in question and granted a mortgage to GMAC Mortgage Corp. (GMAC). In 2009, the mortgage servicer, Nationstar Mortgage, LLC (Nationstar), notified the Halls that the loan was in default and initiated foreclosure proceedings in the Land Court. A series of assignments occurred between 2009 and 2017, and the Halls apparently remained at the property. In 2017, the mortgage was assigned to and recorded by another company, MTGLQ Investors, L.P. (MTGLQ), which initiated new foreclosure proceedings in the Land Court, exercising the power of sale provided in the mortgage and relying on the notice of default provided by Nationstar in 2009. MTGLQ then sold the property at public auction in 2018, where it was the highest bidder.

Later in 2019, Mendes purchased the property from MTGLQ in a separate transaction and initiated a summary process action in the Housing Court against the Halls a short time later. Hall raised several affirmative defenses in response, most notably alleging that Mendes lacked standing to bring the action because

2

the notice of default was legally insufficient, the chain of title was defective, and the promissory note was unenforceable. Hall also raised a counterclaim, alleging that Mendes attempted to perform a self-help eviction in violation of G. L. c. 186, § 14.

Mendes moved for summary judgment, and the judge granted the motion in part. The judge found, among other things, that Mendes established standing by making an unrebutted prima facie case that he possessed legal title to the property. Hall's counterclaim survived summary judgment, and, after a jury-waived trial, the judge found in favor of Mendes.

Discussion. 1. Summary process action. On appeal, Hall claims that summary judgment should have been denied, arguing the underlying foreclosure was invalid because (1) the notice of default was defective; (2) MTGLQ did not have proper title to the property; and (3) the promissory note underlying the mortgage was unenforceable because the statute of limitations on enforcement had elapsed. "The allowance of a motion for summary judgment 'is appropriate where there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law'" (citation omitted). Williams v. Board of Appeals of Norwell, 490 Mass. 684, 689 (2022). We review the judge's decision granting partial summary judgment de

3

novo.  See Metcalf v. BSC Group, Inc., 492 Mass. 676, 680 (2023).  We address each issue in turn.[3]

a.  Notice of default under Pinti.  Hall first claims that summary judgment should not have been granted because the 2009 notice of default did not strictly comply with the terms of the mortgage.  In a summary process action, legal title is established "by proof that the title was acquired strictly according to the power of sale provided in the mortgage" (citation omitted).  U.S. Bank Nat'l Ass'n v. Schumacher, 467 Mass. 421, 428 (2014).  "Failure to comply strictly with the power of sale renders the foreclosure sale void."  Id.  In 2015, six years after the Halls received the notice at issue in this case, the Supreme Judicial Court held that "strict adherence to the notice of default provisions in the [mortgage] was required."  Pinti v. Emigrant Mtge. Co., 472 Mass. 226, 232 (2015).  In that same case, however, the court made clear that its holding applied only to foreclosures "for which the notice of default required by paragraph 22 is sent after the date of this opinion."[4]  Id. at 243.

---

[3] Mendes argues that the issue of possession is moot because Hall has already vacated the property.  We are not persuaded because the foreclosure sale would be rendered void if Hall's argument were successful.  See Pinti v. Emigrant Mtge. Co., 472 Mass. 226, 243 (2015).

[4] Pinti also applies to "any case where the issue was timely and fairly asserted in the trial court or on appeal before July

4

It is undisputed in this case that the notice of default sent to the Halls would run afoul of the holding in Pinti if it were sent today -- indeed, it features the very same language at issue in that case.[5]  The only question, therefore, is whether the Pinti holding applies retroactively to a foreclosure sale initiated several years after that decision where the relevant notice of default predated the decision.  It does not.  To be sure, part of the court's reasoning in support of giving its decision only prospective effect was to prevent the muddying of title to property where a foreclosure had occurred some time in the past.  See Pinti, 472 Mass. at 243.  The court later clarified, however, that Pinti does not apply retroactively merely because a foreclosing party could have issued a new notice of default after the decision.  See Fannie Mae v. Branch, 494 Mass. 343, 353 n.18 (2024) (Branch).  Instead, a party in Hall's position "is required to show that the [deficient notice] 'rendered the foreclosure so fundamentally unfair that [he or]

_____

17, 2015."  Federal Nat'l Mtge. Ass'n v. Marroquin, 477 Mass. 82, 83 (2017).

[5] The language in question informs the mortgagor that they "have the right to 'cure' or reinstate the loan after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense." Because Massachusetts is a nonjudicial foreclosure State, proper notice would indicate that the mortgagor has "the right to bring a court action to assert the non-existence of a default." Pinti, 472 Mass. at 237.

she is entitled to affirmative equitable relief'" (citation omitted).  Id. at 354.  Hall raised no argument, here or below, that equity favors the invalidation of the foreclosure sale.[6] Because Pinti does not apply to the notice of default in question, strict compliance with the notice provisions of the mortgage was not required.

b.  Chain of title.  Next, Hall argues that Mendes's chain of title is defective, rendering his prima facie case of superior title invalid.  Specifically, Hall argues that the chain of title is incomplete because there is no record of any assignment to or from the Federal National Mortgage Association (Fannie Mae) and that the recorded chain of assignments that do appear are defective.[7]

In order to foreclose on a mortgage, the foreclosing entity must hold the mortgage "at the time of the notice of sale and the subsequent foreclosure sale" (citation omitted).  U.S. Bank Nat'l Ass'n v. Ibanez, 458 Mass. 637, 648 (2011).  "In the

---

[6] Hall does argue that the notice did not "substantially comply" with the mortgage, the relevant standard pre-Pinti.  The court in Branch, however, made clear that the relevant standard for pre-Pinti notices is fundamental fairness.  See Branch, 494 Mass. at 354.

[7] Hall's argument that the fact that there is no recorded assignment to or from Fannie Mae somehow invalidates the chain of title necessarily fails because an unrecorded assignment does not alter the chain of title.  See U.S. Bank Nat'l Ass'n v. Ibanez, 458 Mass. 637, 653 (2011).  See also Gomes v. Harrison, 97 Mass. App. Ct. 745, 751-752 (2020).

6

absence of a valid written assignment of a mortgage or a court order of assignment, the mortgage holder remains unchanged." Id. at 653. In support of his motion for summary judgment, Mendes provided an affidavit from a loan service employee with personal knowledge of the mortgage assignments describing the recordation of four assignments in the property's chain of title. The first assignment, dated May 13, 2009, shows an assignment from GMAC's nominee to Nationstar. The second, dated January 17, 2017, purports also to assign the property from GMAC to Nationstar. The third, dated May 16, 2013, is a void attempt to backdate an assignment from Nationstar to GMAC. See id. at 654 ("A confirmatory assignment . . . cannot . . . backdate an assignment being made for the first time"). The fourth, dated January 17, 2017, is an assignment from Nationstar to MTGLQ. Because the second and third assignments are nullities, the chain of title shows an assignment from GMAC to Nationstar and then from Nationstar to MTGLQ. MTGLQ was the foreclosing entity, and there was, accordingly, no break in the chain of title.[8] Summary judgment on this issue was appropriate.

---

[8] Hall's argument that the initial assignment from GMAC to Nationstar was ineffective because it did not use the full name of the GMAC entity lacks merit because this amounts to a scrivener's error. See Sullivan v. Kondaur Capital Corp., 85 Mass. App. Ct. 202, 213 (2014) (scrivener's error in assignment "need not itself invalidate the assignment").

7

c.  Promissory note.  Hall also argues that G. L. c. 106,
§ 3-118, renders the foreclosure invalid.  Under the statute,
"an action to enforce the obligation of a party to pay a note
payable at a definite time must be commenced within six years
after the due date or dates stated in the note or, if a due date
is accelerated, within six years after the accelerated due
date."  G. L. c. 106, § 3-118 (a).  Because the statute
undisputedly renders the underlying note unenforceable, Hall
argues, so must that invalidate the mortgage holder's power of
sale.  We are unpersuaded.

"[T]he inability to recover directly on a note due to the
expiration of a statute of limitations is no bar to recovery
under a mortgage, so long as the underlying debt remains unpaid"
(citation omitted).  Thornton v. Thornton, 97 Mass. App. Ct.
694, 695 (2020).  Here, Hall makes no argument that the debt at
issue was paid.  Rather, he focuses his argument on cases in
which the debt underlying the mortgage was separated from the
mortgage interest.  He points to Eaton v. Federal Nat'l Mtge.
Ass'n, 462 Mass. 569 (2012), for the proposition that an
unenforceable debt renders a mortgage unenforceable, but this
misidentifies the Eaton court's holding.  Rather, that case
depended on the assignment of the mortgage separately from the
note.  See id. at 576 ("where a mortgage and note are separated,
the holder of the mortgage holds the mortgage in trust for the

8

purchaser of the note, who has an equitable right to obtain an assignment of the mortgage" [quotation and citation omitted]). Because here the debt and mortgage were assigned together, the foreclosure did not run afoul of Eaton.

2. General Laws c. 186, § 14. We turn next to the only claim that survived summary judgment, i.e., Hall's counterclaim that Mendes attempted a self-help eviction in violation of G. L. c. 186, § 14. When reviewing a judgment in a jury-waived trial, we accept the judge's findings of fact unless clearly erroneous. Board of Registration in Med. v. Doe, 457 Mass. 738, 742 (2010). We review legal conclusions de novo and without deference to the trial judge's decision. See Trace Constr., Inc. v. Dana Barros Sports Complex, LLC, 459 Mass. 346, 351 (2011).

We recite the facts as found by the judge. See Beal Bank, SSB v. Eurich, 444 Mass. 813, 814 (2005). After Mendes purchased the property from the foreclosing company, he paid an "abandonment fee" to the city of Brockton. In the event that someone was occupying the premises, Mendes posted a letter on the door of the house to announce that he was the new owner. He later returned to the premises with some associates to show them the property, saw that the letter had been removed, and knocked on the door in an attempt to ascertain if anyone was occupying the premises. Mendes received no response, but he noticed a large amount of trash and debris in the back yard. He returned

9

to his truck to get a hammer, intending to use it to open a locked gate in the driveway next to the house and assess the yard. At this time, Hall, who was in fact residing at the property, called 911 to report an active break-in. Police officers arrived, spoke with Mendes and his associates, and departed. The officer who testified at trial did not notice any damage to the property. Upon learning that Hall was occupying the property, Mendes left and did not return. Mendes never approached Hall, attempted to enter the dwelling, or asked Hall to leave the property.

Hall does not challenge any of these findings as clearly erroneous, nor does he challenge the judge's ultimate conclusion that Mendes did not attempt to conduct a self-help eviction. Instead, for the first time on appeal, Hall claims that the judge erred by failing to consider whether Mendes was in breach of the implied warranty of quiet enjoyment, a separate injury contemplated by G. L. c. 186, § 14. Issues not raised below cannot be argued for the first time on appeal. See Boss v. Leverett, 484 Mass. 553, 563 (2020) ("it is important that an appellate court have before it an adequate record and findings concerning a claim to permit it to resolve that claim properly" [citation omitted]). Here, the only legal theory Hall pursued at trial was that Mendes attempted a self-help eviction. At no time in the proceedings below did Hall argue that Mendes was in

breach of the implied warranty of quiet enjoyment.  He presents no legal argument or authority for the proposition that the judge should have, sua sponte, found that Mendes was in breach of the implied warranty of quiet enjoyment where no such breach was alleged.  Accordingly, we treat this argument as waived.

Judgment affirmed.

By the Court (Desmond, Shin & Walsh, JJ.[9]),

Clerk

Entered:  January 7, 2026.

---

[9] The panelists are listed in order of seniority.